

# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF:        )
D.C.M., A MINOR,        )

         )

       Appellant,        )

         )

v.        )        No. SC97595

         )

PEMISCOT COUNTY        )
JUVENILE OFFICE,        )

         )

       Respondent.        )

*Opinion issued August 13, 2019*

## APPEAL FROM THE CIRCUIT COURT OF PEMISCOT COUNTY
### The Honorable W. Keith Currie, Judge

D.C.M. appeals a judgment of the circuit court finding he committed an act that, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree in violation of section 574.120.[1] Evidence adduced at the adjudication hearing demonstrated D.C.M. was sitting in the school cafeteria talking to another student, Jonathan,[2] when D.C.M. stated he felt like "blowing the school up" or wanted to see how it feels to "shoot the school up."

---

[1] D.C.M. was subject to the jurisdiction of the circuit court pursuant to section 211.031.1(3). All statutory references are to RSMo 2016, unless otherwise specified.

[2] This opinion refers to students by their first names for confidentiality purposes.

D.C.M. argues his attorney ("Counsel") was ineffective in representing him in the juvenile proceeding by failing to investigate and call Jonathan to testify at the adjudication hearing. He also argues the circuit court abused its discretion in denying Counsel's request for a continuance to subpoena Jonathan. Finally, he argues the circuit court lacked sufficient evidence to conclude beyond a reasonable doubt that he committed an act that, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree.

The circuit court did not abuse its discretion in denying Counsel's request for a continuance, and, further, when viewed in the light most favorable to the judgment, there was sufficient evidence for the circuit court to find beyond a reasonable doubt that D.C.M. committed an act, which, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree. The record is insufficient, however, to determine whether Counsel was ineffective. As a result, these claims cannot be addressed on direct appeal. The case is remanded to the circuit court for an evidentiary hearing to determine whether Counsel was ineffective. In all other aspects, the judgment is affirmed.

## Background

D.C.M. was a 16-year-old high school student with autism, when the juvenile officer in Pemiscot County filed a petition against him. The petition alleged he had committed an act that, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree, and, as a result, he was subject to the jurisdiction of the juvenile division. Evidence adduced at the adjudication hearing

2

demonstrated that D.C.M. was sitting in the high school cafeteria when another student, Tamara, overheard D.C.M. tell a classmate, Jonathan, "I feel like blowing the school up." A student named Zachary testified he heard D.C.M. say that "he wanted to see how it feels like to blow up the school and wanted – shooting up the school." Zachary further testified, "He said that he might do it tomorrow, the day – same day at – He said he's going to do it tomorrow." After hearing D.C.M.'s comments, Tamara left the cafeteria and told the school principal. The principal called the police, and the staff isolated D.C.M in a classroom until law enforcement officers arrived. Officers then took D.C.M. to the juvenile office.

Police interviewed D.C.M., who denied making any threatening statements and said he was only joking. Police also interviewed Jonathan. The police report provided, "Jonathan stated that he did not recall [D.C.M.] making any threats or statements but that he didn't doubt it. [Jonathan] stated that [D.C.M.] has made racial comments towards other students but that he had not heard [D.C.M.] make any statements."

The juvenile officer filed a petition, and an adjudication hearing was held 12 days later. The juvenile officer called seven witnesses: four students, a police officer, and two school principals. Two witnesses, Tamara and Zachary, testified they heard D.C.M. make the threatening statements. D.C.M. testified he did not make any threatening statements and said the other witnesses were lying. Counsel then requested a continuance to subpoena Jonathan as well as two other students, Joshua and Marcus, who were also sitting at the table with D.C.M. The juvenile officer objected, asserting Counsel had access to the police report that named all of the witnesses and, therefore, had a sufficient

3

opportunity to obtain the witnesses' presence at the hearing. The circuit court denied the request.

Based on the evidence presented at the adjudication hearing, the circuit court continued jurisdiction over D.C.M. and placed him in the custody of the division of youth services for an indefinite term. D.C.M. appeals.[3]

## Analysis

### I. Mootness

D.C.M. turned 18 and was released from supervision approximately one month before the case was argued and submitted. As a result, this Court must examine whether this appeal is now moot.[4]

Because "[m]ootness implicates the justiciability of a controversy and is a threshold issue to appellate review," this Court must consider, either on a party's motion or acting *sua sponte*, whether an appeal is moot. *Mo. Municipal League v. State*, 465 S.W.3d 904, 906 (Mo. banc 2015) (alteration in original) (quoting *LeBeau v. Comm'rs of Franklin Cty*, 459 S.W.3d 436, 438 (Mo. banc 2015)). "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *State ex rel. Griffith v. Precythe*, 574 S.W.3d 761, 763 (Mo. banc 2019). "A case is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was

---

[3] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.
[4] This Court issued an order requesting supplemental briefing from both parties showing cause why the appeal is not moot.

4

rendered, would not have any practical effect upon any then existing controversy." *State ex rel. Gardner v. Boyer*, 561 S.W.3d 389, 394 (Mo. banc 2018) (quoting *State ex rel. Hawley v. Heagney*, 523 S.W.3d 447, 450 (Mo. banc 2017)). If a case is moot, this Court can exercise its discretion to decide the case on the merits if one of two narrow exceptions to the mootness doctrine exist: "(1) when a case becomes moot after submission and argument; and (2) when the issue raised is one of general public interest and importance, recurring in nature, and will otherwise evade appellate review." *State ex rel. Peters-Baker v. Round*, 561 S.W.3d 380, 384-85 (Mo. banc 2018) (citations omitted).[5]

Both D.C.M. and the State argue a decision by this Court would impact D.C.M and urge this Court to decide this case on its merits. While D.C.M. recently turned 18 and has since been released from supervision, a record of his adjudication would remain. Juvenile records for offenses that would be felonies if committed by an adult are open to the public to the extent criminal proceeding records are open to the public. Section 211.321.2(2). The offense of making a terrorist threat in the second degree is such a felony. *See* section 574.120.[6] The question whether an appeal of a case in which a

---

[5] Because this case is not moot, as explained below, these exceptions are inapplicable here.

[6] Further, D.C.M. may have a duty to disclose his adjudication on various applications in the future. For instance, the military considers an applicant's juvenile record when determining an applicant's fitness, *see* 32 C.F.R. § 96.1, et seq. (2016), and the character and fitness requirements for admission to the bar of this state require disclosure of juvenile matters. Character & Fitness Update Application, https://www.mble.org/browseprintform.action?formId=82 (last visited Aug. 12, 2019).

juvenile has been released from supervision implicates the mootness doctrine is one of first impression for this Court. [7]

In a case factually analogous to the one here, but in a criminal context, this Court addressed the merits of an adult's appeal of his conviction despite that he had been pardoned. *State v. Jacobson*, 152 S.W.2d 1061, 1064 (Mo. 1941). Although the pardon allowed him not to serve his sentence, the appeal was not moot because the underlying conviction remained on his record. *Id.* *Jacobson* emphasized that an individual should have the opportunity "to remove the discredit and stigma flowing from the judgment of conviction." *Id.* Further, if convicted of another crime in the future, *Jacobson* recognized the defendant would be subject to greater penalties due to his prior conviction. *Id.* As a result, this Court concluded the case was not moot because there was "still a substantial element of controversy existing." *Id.*

As in *Jacobson*, D.C.M. should be given the opportunity to remove the discredit and stigma associated with his record of adjudication. Even though D.C.M. has been

---

[7] Although this issue has not been considered by this Court, the court of appeals has addressed whether juvenile appeals were moot. *See In re S.B.A.*, 530 S.W.3d 615, 621-22 (Mo. App. 2017) (finding an exception to the mootness doctrine because there was a movement to make more juvenile records public and the record could have "other lifelong consequences and stigma"); *In re N.R.W.*, 482 S.W.3d 473, 475 (Mo. App. 2016) (finding appeal was not moot when juvenile was adjudicated delinquent for an offense that would have been considered a felony if committed by an adult); *T.S.G. v. Juvenile Officer*, 322 S.W.3d 145, 148 (Mo. App. 2010) (finding an exception to the mootness doctrine where juvenile was initially adjudged to have committed sexual misconduct because of the "movement to make more juvenile records public"). But in *S.B.A.* and *T.S.G.*, the court of appeals relied on the so-called "significant collateral consequences" exception to the mootness doctrine, an exception not recognized by this Court. *S.B.A*, 530 S.W.3d at 621-22; *T.S.G.*, 322 S.W.3d at 148. In *N.R.W.*, the court found the case was not moot, as the collateral consequences the juvenile would suffer as a result of his prior adjudication constituted an existing controversy. 482 S.W.3d at 475.

released from supervision, his conduct would have constituted a felony had he been an adult at the time he committed the act. If D.C.M. is tried in the future for a criminal offense, evidence of this prior juvenile adjudication could be introduced. *See S.B.A.*, 530 S.W.3d at 620. For these reasons, this case is not moot, as addressing this appeal would have a practical effect on an existing controversy. *See Gardner*, 561 S.W.3d at 394. Accordingly, this Court will review the merits of the appeal.

## II. *Ineffective Assistance of Counsel*

D.C.M. argues that he had a due process right to the effective assistance of counsel in his juvenile proceeding and that Counsel violated this right when he failed to investigate and call Jonathan to testify, as well as when Counsel elicited and failed to object to certain testimony. The State recognizes juveniles have a due process right to effective assistance of counsel under Missouri law but argues D.C.M. cannot raise these claims on direct appeal and, even if he could raise these claims, Counsel did not provide ineffective assistance. The issue of what procedure should be followed when reviewing ineffective assistance of counsel claims in juvenile cases is a question of law that receives *de novo* review. *See Grado v. State*, 559 S.W.3d 888, 895 (Mo. banc 2018).

It is well-established that a child has a right to counsel at a delinquency proceeding pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *In re Gault*, 387 U.S. 1, 36 (1967), *overruled on other grounds by Allen v. Illinois*, 478 U.S. 364, 372-73 (2008); *see also* Rule 115.02 ("In any proceeding under subsection 1 of section 211.031, RSMo, the court shall appoint counsel for the juvenile when necessary to assure a full and fair hearing."). This right to counsel implies that

7

counsel must be effective. *Gault*, 387 U.S. at 30; *In re R.G.*, 495 S.W.2d 399, 403 (Mo. 1973). The due process right to counsel "would be hollow were there no accompanying requirement counsel be effective." *Grado*, 559 S.W.3d at 896.

Despite the right to effective assistance of counsel, no statute or case from this Court provides a mechanism for a committed juvenile to raise an ineffective assistance of counsel claim. D.C.M. encourages this Court to address the claims on direct appeal. The State, on the other hand, argues direct appeal is a "suboptimal path" for juveniles to raise ineffective assistance claims, suggesting the legislature should adopt a statutory procedure or this Court should adopt a rule setting forth a procedure.

When deciding whether claims for ineffective assistance of counsel can be addressed on direct appeal, the pertinent question is whether the record is sufficient to address the claim. Considering the sufficiency of the record when determining whether ineffective assistance of counsel claims can be addressed on direct appeal is consistent with the approach taken by this Court in termination of parental rights and sexually violent predator cases. *See In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 820 n.22 (Mo. banc 2011) (clarifying that ineffective assistance of counsel claims could be addressed on direct appeal when such claims could be sufficiently evaluated on the record), *overruled on other grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811, 816 n.3 (Mo. banc 2017); *Grado*, 559 S.W.3d at 897 (addressing claim of ineffective assistance of counsel in a sexually violent predator proceeding when all claims "involve[d] counsel's actions at trial, and [were] evident on the record"). In accordance with this precedent, this Court will review

8

the record and, if the record is sufficient, address D.C.M.'s ineffective assistance of counsel claims on direct appeal.[8]

A claim of ineffective assistance of counsel typically cannot be addressed on direct appeal, however, when "issues are likely to arise regarding ... counsel's failure to adequately investigate or prepare for trial, or counsel's failure to pursue defenses or witnesses." *Grado*, 559 S.W.3d at 897 (quoting *In re Carmody*, 653 N.E.2d 977, 985 (Ill. App. 1995)). In each of these scenarios, the record is likely to be incomplete with respect to the claim of ineffective assistance.

D.C.M. alleges Counsel was ineffective for failing to investigate and call Jonathan to testify. The record is clear Jonathan was sitting next to and talking with D.C.M. when D.C.M. allegedly made the threatening statement. Despite having access to the police report detailing Jonathan's interview with the police, Counsel called no witnesses other than D.C.M. and was unaware that Jonathan was a potential witness until the day of the hearing, indicating Counsel failed to consider the police report. When asking for a

---

[8] Several states have addressed claims of ineffective assistance of counsel in a juvenile hearing on direct appeal when the record is sufficient. *See In re N.A.D.*, 338 P.3d 226, 229 (Utah App. 2014); *In re C.W.N.*, 742 S.E.2d 583, 585-88 (N.C. 2013); *Commonwealth v. Ogden O.*, 864 N.E.2d 13, 19-21 (Mass. 2007); *State v. A.N.J.*, 225 P.3d 956, 965-67 (Wash. 2010); *In re Parris, W.*, 770 A.2d 202, 205-13 (Md. 2001); *In re Maricopa Cty. Juvenile Action No. JV-511576*, 925 P.2d 745, 747-48 (Ariz. App. 1996). Other states have declined to address juveniles' ineffective assistance of counsel claims on direct appeal when the record is insufficient. *See In re Alonzo O.*, 40 N.E.3d 1228, 1234 (Ill. App. 2015); *In re D.C.*, 705 S.E.2d 313, 314 (Ga. App. 2011); *State v. Megan S.*, 671 S.E.2d 734, 739 (W. Va. 2008); *In re Robert P.*, 791 N.Y.S.2d 614, 615 (N.Y. App. Div. 2005).

continuance to subpoena Jonathan as well as two other students sitting at the table with D.C.M., Joshua and Marcus, Counsel stated:

> Your Honor, [D.C.M] has provided names of a Joshua [], a Jonathan [] and a Marcus somebody that was at his table, and I wasn't provided that information and wasn't provided any opportunity, if I could, to subpoena these people to testify. I would like to have some opportunity to have them present, Your Honor, since he's denied the fact that [Zachary] was – was not at his table, but he does testify that a Joshua [], a Jonathan [], and a Marcus or Demetrius or whoever – whatever his name was, was also at the table.

The record is silent, however, regarding what Jonathan's testimony would have been or whether Jonathan was able to be located by D.C.M.'s attorney. While the police report provides some indication as to what Jonathan's testimony might have been, Jonathan's statements were not under oath, and the report is not a substitute for sworn testimony in court. Had Jonathan been located, his testimony could have unequivocally supported D.C.M.'s defense, as the police report indicated that Jonathan did not hear D.C.M. make a threatening statement. But it is also possible Jonathan's testimony could have cast doubt on D.C.M.'s defense, as the police report further reflects Jonathan stated he "wouldn't doubt" D.C.M. made threatening statements.

Jonathan also told police he was aware D.C.M. had made racial comments toward other students. This statement directly conflicts with D.C.M.'s testimony that he never made racial comments and would not be beneficial to D.C.M. "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness

10

does not constitute ineffective assistance." *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005).[9]

Unlike in *Grado*, in which the claim involved the counsel's failure to object to evidence and was evident on the record, 559 S.W.3d at 897, the record is incomplete with respect to D.C.M.'s claim. This Court cannot speculate as to whether Jonathan would have been located or what his testimony would have been.[10] Without knowing this information, it cannot be determined on this record whether Counsel was ineffective.[11]

---

[9] The dissenting opinion correctly indicates that, if Jonathan had testified consistent with his statement to the police, his testimony would not have unequivocally supported D.C.M. The dissenting opinion further adds that, if Jonathan's hearing testimony were inconsistent with statements made to the police, those statements could be used to impeach Jonathan's testimony. But this Court cannot speculate regarding what Jonathan's testimony would have been or what would have occurred at the hearing had he testified.

[10] In the criminal context, this information is typically demonstrated by testimony at a subsequent evidentiary hearing. *See Johnson v. State*, 406 S.W.3d 892, 908 (Mo. banc 2013) (potential witness testified at the evidentiary hearing that, had she been contacted, "she would have been willing and able" to testify and further explained what she would have said at trial).

[11] Missouri law has not defined the standard to be applied when determining whether a juvenile's counsel was effective. D.C.M. encourages adoption of the *Strickland* standard, arguing delinquency proceedings, in which a juvenile's liberty is at stake, are similar in nature to criminal cases. *See Strickland v. Washington*, 466 U.S. 668 (1984). In response, the State argues that the "meaningful hearing" standard, the standard used by this Court in termination of parental rights cases, is more consistent with the United States Supreme Court's "fundamental fairness" standard required in juvenile proceedings. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971). Under the meaningful hearing standard, this Court would determine "whether the attorney was effective in providing his client with a meaningful hearing based on the record." *In re J.P.B.*, 509 S.W.3d 84, 97 (Mo. banc 2017). The *Strickland* standard would require D.C.M. to prove (1) Counsel failed to demonstrate the level of skill and diligence of a reasonably competent attorney under similar circumstances, and (2) D.C.M. was prejudiced by this failure. *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). Both prongs "must be shown by a preponderance of the evidence." *Tisius v. State*, 519 S.W.3d 413, 420 (Mo. banc 2017). Prejudice requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Further, to demonstrate ineffective assistance of counsel for failure to call a witness, the *Strickland* standard requires a showing that "1) [t]rial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." *Worthington*, 166 S.W.3d at

11

Neither the legislature nor this Court's rules have established how to address claims of ineffective assistance in a juvenile hearing when the record is insufficient to do so on direct appeal. D.C.M. encourages this Court to remand for an evidentiary hearing in the circuit court or to appoint a master on appeal pursuant to Rule 68.03.

States such as Georgia and Illinois remand the case to the circuit court for an evidentiary hearing and finding regarding whether counsel was ineffective. *See D.C.*, 705 S.E.2d at 314 (remanding the case for an evidentiary hearing and determination on the ineffective assistance claims); *Alonzo,* 40 N.E.3d at 1234 ("Such a hearing will give [the juvenile] a full opportunity to prove facts establishing ineffectiveness of counsel, the State a full opportunity to present evidence to the contrary, and the establishment of a factual record on the issue."). An evidentiary hearing would allow a record to be established regarding whether Jonathan could have been located to testify and what his testimony would have been, as well as other evidence pertaining to D.C.M.'s counsel's effectiveness. An evidentiary hearing is preferable to a special master in this context because the additional findings and conclusions will be made by the circuit court, which is already familiar with the case.[12] Accordingly, the case is remanded for an evidentiary

577. Because the record is insufficient to address D.C.M.'s claims on appeal, the standard need not be determined by the Court today.

[12] In addition to the appointment of a special master or remanding for an evidentiary hearing, cases such as the present one could also be remanded for a *limited* evidentiary hearing, which would involve instructing the circuit court to make findings and conclusions about the ineffective assistance of counsel issue and to then file those findings with this Court to resolve the issue on appeal while deferring to the circuit court on any factual findings. *See State v. Wilder*, 946 S.W.2d 760, 765 (Mo. App. 1997). Although both the appointment of a special master and remanding for a *limited* evidentiary hearing would avoid the delay of a subsequent appeal, the action taken by an appellate court may depend on the facts of a particular case. Here, D.C.M. is

12

hearing to determine whether Counsel was ineffective. If the circuit court finds Counsel ineffective, D.C.M. should be granted a new adjudication hearing. *Alonzo*, 40 N.E.3d at 1234. If D.C.M.'s claim is rejected, he can appeal, and the record on appeal will include the new evidence. *Id.*[13]

### III. The Circuit Court's Denial of D.C.M.'s Request for a Continuance

D.C.M. argues the circuit court abused its discretion by not allowing a continuance for Counsel to subpoena Jonathan, Joshua, and Marcus, three students who were sitting at the table with D.C.M. at the time he made the alleged threat. Counsel requested the continuance at the close of all evidence and made no offer of proof regarding the students' testimony.

### Standard of Review

Whether to grant a continuance is within the sound discretion of the circuit court. *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003). An accused must demonstrate he was prejudiced by the denial of the continuance. *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). "If a continuance is not likely to result in the presence of the witness at trial, the court will not be held to have abused its discretion in denying the continuance." *Id.*

---

no longer in the division of youth services' custody and any delay would have little impact on his case. Accordingly, remanding the case to the circuit court is preferable.

[13] Because this Court finds the record insufficient and remands for an evidentiary hearing and determination regarding whether Counsel was ineffective, there is no need to reach D.C.M.'s second claim that counsel was ineffective for eliciting and failing to object to certain testimony. This claim can be raised by D.C.M. on remand to the circuit court.

**Analysis**

Although there are no rules pertaining to requests for continuances in juvenile proceedings, this Court's rules in civil and criminal actions require that an application for a continuance for the purpose of securing a witness demonstrate: the particular facts the witness would allegedly prove, the applicant's due diligence to obtain the witness or testimony, and the name and location of the witness as well as grounds to believe the attendance could be procured within a reasonable time. Rules 24.10; 65.04; *see also Williams v. Dir. of Revenue*, 764 S.W.2d 176, 177 (Mo. App. 1989) ("An application for a continuance based on the absence of a witness or his evidence, among other things, must show due diligence upon the part of the applicant to obtain such witness or testimony.").

In his request for a continuance, Counsel indicated he was not provided with the names of Jonathan, Joshua, and Marcus. Counsel's request was vague and failed to specify, among other requirements, the facts the witnesses' testimony would prove.

The circuit court did not abuse its discretion in denying Counsels' request for continuance, as Counsel failed to make an adequate offer of proof as to the witnesses' expected testimony. *See State v. Selvy*, 921 S.W.2d 114, 118 (Mo. App. 1996) (circuit court in juvenile hearing did not abuse its discretion in denying continuance where the record was silent as to what the witness's testimony would have been). Further, granting a continuance could cause undue delay, and under this Court's rules, juvenile hearings must be completed expeditiously. *See* Rule 127.08. The circuit court did not abuse its

14

discretion in denying Counsel's request for a continuance, and, further, D.C.M. has failed to demonstrate he was prejudiced by this action.

## IV.  Sufficiency of the Evidence

D.C.M. argues the evidence was insufficient to prove beyond a reasonable doubt that he knowingly made a threat or that he recklessly disregarded the risk of causing the evacuation, quarantine, or closure of his school.

### Standard of Review

Juvenile proceedings are reviewed "in the same manner as other court-tried cases." *C.G.M., II v. Juvenile Officer*, 258 S.W.3d 879, 882 (Mo. App. 2008).  This Court will affirm a judgment in a juvenile proceeding unless it is not supported by evidence, is against the weight of evidence, or erroneously declares or applies the law.  *In re A.S.W.*, 226 S.W.3d 151, 153 (Mo. banc 2007).  The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, "which is free to believe none, part, or all of their testimony."  *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 236 (Mo. App. 2000).

For a sufficiency of the evidence challenge, "[t]he evidence, including all reasonable inferences therefrom, is considered in the light most favorable to the judgment, disregarding all contrary inferences."  *State v. Pike*, 162 S.W.3d 464, 473-74 (Mo. banc 2005).  When a juvenile is alleged to have committed an act that would be a criminal offense if committed by an adult, the standard of proof, like that in criminal trials, is beyond a reasonable doubt.  *C.L.B.*, 22 S.W.3d at 239 (citing *In re Winship*, 397 U.S. 358, 362 (1970)).

15

**Analysis**

D.C.M. was alleged to have committed an act that, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree. A person commits the offense of making a terrorist threat in the second degree if the person "recklessly disregards the risk of causing the evacuation, quarantine or closure of any portion of a building, inhabitable structure, place of assembly or facility of transportation and knowingly … [c]ommunicates an express or implied threat to cause an incident or condition involving danger to life." Section 574.120.1(1). A person acts recklessly "when he or she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4. A person acts knowingly when "he or she is aware of the nature of his or her conduct." Section 562.016.3(1). Accordingly, the juvenile officer had to establish that, when making the threatening statement, D.C.M.: (1) was aware he was communicating an express or implied threat to cause an incident endangering human life and (2) consciously disregarded a substantial and unjustifiable risk of causing the evacuation or closure of the school.

Tamara and Zachary testified D.C.M. stated he either felt "like blowing the school up" or "wanted to see how it feels like to blow up the school and wanted – shooting up the school." Zachary further testified, "He said that he might do it tomorrow, the day – same day at – He said he's going to do it tomorrow." Such a definite, declaratory statement indicates awareness of the intent to cause danger to human life. *C.G.M,* 258

16

S.W.3d at 883.[14] Both Tamara and Zachary testified D.C.M.'s statements scared them, and Tamara immediately reported the threat to the principal. "[T]he desired reaction of the listener may constitute some evidence of the intent of the person making the statement." *Id.* When viewed in the light most favorable to the judgment, there was sufficient evidence for the circuit court to conclude D.C.M. was aware he was making a threat to cause an incident endangering human life.

After Tamara reported the threat, the principal called the police. The staff isolated D.C.M. in a classroom until law enforcement officers arrived about an hour later to take D.C.M. to the juvenile office. School attendance declined substantially the next day. The principal testified that, had she not been able to isolate D.C.M. and had the alleged statement been that D.C.M. planned to shoot up the school that day, she would have evacuated or locked down the building immediately. Actual evacuation or lockdown is not required to show a terrorist threat was made, but a principal's testimony regarding the possibility of an evacuation "is pertinent to the determination of whether a substantial and unjustifiable risk of evacuation existed." *Id.* The principal's testimony indicated a

---

[14] Under a different factual scenario, the court in *C.G.M.* held there was insufficient evidence to find the juvenile made a terrorist threat. 258 S.W.3d at 884. In *C.G.M.*, the juvenile told another student that "he *may* get dynamite from his dad for his birthday" and asked if the student "wanted to help him blow up the school." *Id.* at 880 (emphasis added). Four or five months passed before the other student reported the juvenile had made the statement. *Id.* Testimony from the student indicated that he did not believe the juvenile would receive dynamite for his birthday and that he was not in fear the juvenile would blow up the school. *Id.* The court determined the statement was not declaratory and did not indicate intent to commit the act. *Id.* at 884. Unlike the statement in *C.G.M.*, D.C.M.'s statement indicated intent and a sense of immediacy, as he specifically stated he would "do it tomorrow." Further, unlike *C.G.M.*, the students who heard D.C.M.'s statement were scared, and the threat was immediately reported to school authorities.

17

substantial risk of an evacuation or lockdown as a result of D.C.M.'s statement. There was sufficient evidence for the circuit court to conclude that D.C.M. consciously disregarded a risk of causing the evacuation of the school.

When viewed in the light most favorable to the judgment, the evidence showed D.C.M. made a clear, declaratory statement indicating his intent to "shoot up" or "blow up" the school. There was sufficient evidence for the circuit court to find beyond a reasonable doubt that D.C.M. committed an act, which, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree.

## Conclusion

The circuit court did not abuse its discretion in denying Counsel's request for a continuance, and, further, there was sufficient evidence for the circuit court to find beyond a reasonable doubt that D.C.M. committed an act that, if committed by an adult, would have constituted the felony of making a terrorist threat in the second degree. The record is insufficient, however, to determine whether Counsel was ineffective. As a result, these claims cannot be addressed on direct appeal. The case is remanded to the circuit court for an evidentiary hearing to determine whether counsel was ineffective. In all other aspects, the judgment is affirmed.

_____
Mary R. Russell, Judge


Draper, C.J., Breckenridge, and Stith, JJ.,
concur; Powell, J., dissents in separate opinion
filed; Wilson, J., concurs in opinion of
Powell, J.; Fischer, J., authored separate opinion.

18



# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF: )
D.C.M., A MINOR, )
 )
        Appellant, )
 )
v. )    No. SC97595
 )
PEMISCOT COUNTY )
JUVENILE OFFICE, )
 )
        Respondent. )

## DISSENTING OPINION

This Court need not, and should not, remand this case to the circuit court because the record is clear D.C.M. did not receive ineffective assistance of counsel. For this reason, I respectfully dissent and would affirm the circuit court's judgment.[1]

### Factual and Procedural Background

D.C.M. was adjudicated as a juvenile for making a terroristic threat after several students overheard him threaten to blow up his high school and commit other acts of

---

[1] I concur with the principal opinion in sections I, III, and IV. I also concur with the principal opinion's conclusion in section II that this Court need not determine, in this case, the standard of review for ineffective assistance claims in juvenile delinquency matters and that the review of such claims should be on direct appeal.

violence at the school. During the adjudication proceedings, seven witnesses, including four students, testified against D.C.M. Each of the students testified they heard D.C.M. threatening to blow up the school or overheard him make alarming threats of violence. Many of the students testified D.C.M. frequently made derogatory racial statements, and the evidence suggested the racial makeup of the school was the reason D.C.M. sought to commit violence at the school. D.C.M. testified and denied making any threatening statements or inappropriate racial comments. Another student, Jonathan, was not called to testify although he was alleged to be present when D.C.M. made the threat to blow up the school. According to a police report, Jonathan stated he did not specifically remember D.C.M. making a threatening statement but "he didn't doubt it" based on his previous interactions with D.C.M. Jonathan also stated D.C.M. made racially derogatory comments toward other students.

After hearing all the evidence, the circuit court found credible the seven witnesses who testified against D.C.M. but D.C.M.'s testimony completely lacking in credibility. Despite these credibility determinations, D.C.M. alleges on appeal that his adjudication delinquency was the result of ineffective assistance of counsel. D.C.M. alleges his counsel was ineffective for two reason. First, he claims his counsel failed to investigate and call Jonathan to testify. Second, D.C.M. alleges his counsel elicited and then failed to object to certain irrelevant testimony. This opinion will address each of these allegations in order after discussing the standard for determining ineffective assistance of counsel in a juvenile delinquency proceeding.

2

**This Court need not decide the applicable standard**

As the principal opinion correctly notes, Missouri law has not defined the standard to be applied when determining whether counsel was ineffective in a delinquency proceeding. D.C.M. advocates adopting the *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The State urges the use of the "meaningful hearing" standard, which, as the principal opinion points out, is consistent with the United States Supreme Court's "fundamental fairness" standard required in juvenile proceedings. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971). Under the meaningful hearing standard, this Court would determine "whether the attorney was effective in providing his client with a meaningful hearing based on the record." *J.P.B. v. Greene Cty. Juvenile Office*, 509 S.W.3d 84, 97 (Mo. banc 2017) (internal quotation omitted). The *Strickland* standard would require D.C.M. to prove (1) his counsel failed to demonstrate the level of skill and diligence of a reasonably competent attorney under similar circumstances, and (2) he was prejudiced by this failure. *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). Prejudice requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 437 (internal quotation omitted). Under either standard, D.C.M. is not entitled to relief. Therefore, I concur with the principal opinion that this Court need not determine the standard to be applied in this case.

**D.C.M. fails to establish ineffective assistance of counsel under either standard**

D.C.M. asserts his counsel was ineffective for not subpoenaing Jonathan to testify at his adjudication hearing when counsel had access to a police report identifying Jonathan

3

as a witness. Because D.C.M. cannot establish Jonathan's testimony would have changed the outcome of his adjudication, however, he is not entitled to relief. Concerning as it may be that D.C.M.'s counsel was apparently unaware that Jonathan was present when D.C.M. allegedly made the threat to blow up the school,[2] his testimony would not have sufficiently assisted D.C.M.'s defense. As both the principal and separate opinions point out, "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005) (internal quotation omitted). Here, the record before the Court suggests Jonathan's testimony would not unqualifiedly support D.C.M.'s defense that he did not make the threatening statements. Although Jonathan did tell police he did not recall D.C.M. making any threats, the police report states Jonathan also said he "didn't doubt" D.C.M. made threatening statements. In addition, Jonathan stated he heard D.C.M. make racially derogatory statements in direct contradiction to D.C.M.'s testimony. Jonathan's testimony, therefore, would not "unqualifiedly support" D.C.M. *Id*. Of course, if called to testify, Jonathan could have changed his testimony from what is recited in the police report in a manner that would unqualifiedly support D.C.M. But then the statements he made to the police could be used to impeach Jonathan, severely diminishing his credibility and the veracity of this testimony. Accordingly, D.C.M. has not proven Jonathan's testimony "would have produced a viable defense." *McIntosh v. State*, 413

---

[2] It is vital to point out that D.C.M.'s counsel had only 12 days to prepare for the adjudication hearing due to the Rule 127.08 requirement that adjudication hearings be held "at the earliest possible date."

4

S.W.3d 320, 328 (Mo. banc 2013) (internal quotation omitted); *see also Barton v. State*, 432 S.W.3d 741, 757–58 (Mo. banc 2014) (failure to call a witness was not ineffective assistance of counsel under the *Strickland* standard); *In re W.S.M.*, 845 S.W.2d 147, 153–54 (Mo. App. 1993) (failure to call witnesses was not ineffective assistance of counsel under the "meaningful hearing" standard).

Secondly, D.C.M. argues his counsel was ineffective because he failed to object to and, in some cases, elicited testimony of irrelevant matters such as D.C.M.'s commission of prior bad acts. He further argues his counsel was ineffective because, when D.C.M. was cross-examined, he was improperly asked to comment about the credibility of other witnesses and his counsel did not object. This Court allows a wider amount of latitude in the admission of evidence in a court-tried case because there is less of a risk the court will be misled or confused. *See State v. Sladek*, 835 S.W.2d 308, 313 (Mo. banc 1992); *see also I.R.S. v. Greene Cty. Juvenile Office*, 361 S.W.3d 444, 449 (Mo. App. 2012) ("[I]t is nearly impossible in a court-tried case to predicate reversal on the erroneous admission of evidence. Deference is given to the judge's ability to consider that evidence which is relevant and admissible." (alteration in original) (internal citations omitted)); *State v. Elliott*, 271 S.W.3d 604, 607 (Mo. App. 2007) (presumption exists that the judge in a court-tried case "was not confused or misled by any allegedly irrelevant or inadmissible evidence unless the record clearly demonstrates the court considered and relied upon the inadmissible evidence"). This Court recognizes the circuit court is "perfectly capable of receiving some evidence for one purpose and not another" and presumes the circuit court "was not prejudiced by any inadmissible evidence and was not influenced by such evidence

5

in reaching [its] decision." *I.R.S.*, 361 S.W.3d at 449 (internal quotation omitted). The record indicates the circuit court was cognizant of this concept, as the court allowed the admission of an exhibit during the adjudication hearing, stating "we'll look at this if we reach the dispositional stage."

D.C.M. has failed to show his counsel was ineffective under either the "meaningful hearing" standard or the *Strickland* standard. Although D.C.M. may have desired Jonathan to be available to testify at the adjudication hearing, or may believe his counsel should have made certain objections during his hearing, those complaints do not amount to deprivation of a meaningful hearing. *J.P.B.*, 509 S.W.3d at 97. Similarly, D.C.M. has not established he was prejudiced by any alleged ineffectiveness of his counsel. *Watson*, 520 S.W.3d at 435.

Because I believe the record is sufficient to find D.C.M. received a meaningful hearing and suffered no prejudice from the representation he received, I dissent from part II of the principal opinion. For these reasons, I would affirm and would not remand this case to the circuit court for further proceedings.

_____
W. Brent Powell, Judge

6



# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF: )
D.C.M., A MINOR, )
               )
         Appellant, )
               )
v. )         No. SC97595
               )
PEMISCOT COUNTY )
JUVENILE OFFICE, )
               )
         Respondent. )

**SEPARATE OPINION**

D.C.M. turned 18 and was released from the division of youth services' supervision a month before this case was argued and submitted. The principal opinion holds this case is not moot because of the potential introduction of D.C.M.'s juvenile delinquency adjudication in a hypothetical, future criminal proceeding, due to the application of § 211.321.2(2).[1] In my view, because D.C.M. has been released and is no longer under the division of youth services' supervision, this case is moot and does not meet either of the mootness exceptions recently outlined by this Court in *State ex rel. Peters-Baker v. Round*,

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

561 S.W.3d 380, 384-85 (Mo. banc 2018), and *State ex rel. Gardner v. Boyer*, 561 S.W.3d 389, 394 (Mo. banc 2018).

**Factual and Procedural Background**

D.C.M., a 16-year-old, high school student with autism, newly enrolled in his then-high school, was alleged to have made a terroristic threat in the second degree in violation of § 574.120. He was new to the high school because he had been suspended at his old high school for the remaining days of the previous school year for threatening a teacher and student.

On the fifth day of school at his new high school, D.C.M. got on the school bus and started discussing a recent school shooting in Florida before he said, "I wonder how it feels to shoot somebody." At lunch that day, D.C.M. said, "I feel like blowing the school up" and also discussed shooting up the school. He told a student sitting at his table it was because there were too many black people at the school. Students at the table next to D.C.M.'s overheard his threat and reported them to the high school principal. The principal called the police and made sure staff kept D.C.M. in a classroom until police officers arrived. The officers then removed him from the school and took him to the juvenile office.

In his interview with police officers, D.C.M. denied making any threatening statements in the cafeteria. Police officers also interviewed Jonathan, a student sitting at D.C.M.'s table that day, who said he did not specifically remember D.C.M. making the threatening statement but "he didn't doubt it" based on his interactions with D.C.M.

2

The juvenile office filed a delinquency petition and a hearing was held in circuit court[2] 12 days later. The juvenile office called seven witnesses: four students, a police officer, and two school principals. Two of the students testified they heard D.C.M. make the threatening statements in the cafeteria from the table next to D.C.M.'s and they did not think it was said in a joking manner. D.C.M. testified that every witness for the juvenile office was lying. Counsel moved for a continuance to subpoena Jonathan and two other students also sitting at D.C.M.'s table, saying he was unaware of these witnesses prior to the proceeding. The circuit court overruled the motion.

The circuit court expressly found the seven witnesses for the juvenile office to be more credible than D.C.M. and, accordingly, found beyond a reasonable doubt that D.C.M. made the threatening statement in the cafeteria. The circuit court ordered D.C.M. be committed to the division of youth services' custody for an indefinite period. Before his case was argued and submitted to this Court, D.C.M. turned 18 and was released from supervision.

**Analysis**

The principal opinion holds this case is not moot because "D.C.M. should be given the opportunity to remove the discredit and stigma associated with his record of adjudication." Slip op. at 6. "A case is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *State ex rel. Hawley v. Heagney,*

---

[2] Due to D.C.M.'s age at the time of the offense, the circuit court found D.C.M. came "within the provisions of the Juvenile Code" and exercised jurisdiction pursuant to § 211.031.1(3).

3

523 S.W.3d 447, 450 (Mo. banc 2017). The principal opinion correctly reaffirms there are only "two narrow exceptions to the mootness doctrine: (1) when a case becomes moot after submission and argument; and (2) when the issue raised is one of general public interest and importance, recurring in nature, and will otherwise evade appellate review." *Peters-Baker*, 561 S.W.3d at 384-85 (internal citations omitted).[3]

In my view, D.C.M.'s release from juvenile supervision mooted his case, and neither of the mootness exceptions applies. His release occurred one month *before* submission and argument; therefore, the first exception does not apply. The second exception does not apply either. D.C.M. has an individual interest in not having a future public record of his juvenile delinquency proceedings, but such interest is not of any general public interest and importance.

I concur with the principal opinion that *if* "D.C.M. is tried in the future for a criminal offense, evidence of this prior juvenile adjudication *could* be introduced." Slip op. at 7 (emphasis added).[4] However, these hypothetical future collateral consequences are too

---

[3] The principal opinion correctly rejects the notion of prior court of appeals opinions that created an additional exception to the mootness doctrine based on potential collateral consequences of a juvenile adjudication. Slip Op. at 5-6 (fn 7).

[4] In holding the case is not moot, the principal opinion's focused concern is the potential collateral consequences stemming from D.C.M. having a public record of the juvenile delinquency judgment against him.

The circuit court expressly found all evidence that D.C.M. made the threatening comments more credible than D.C.M.'s insistence that every other witness was lying. Additionally, one of the three potential uncalled witnesses already told police he "didn't doubt" that D.C.M. made the threatening statement due to his knowledge of D.C.M.'s character. As the principal opinion highlights, "[i]f a potential witness's testimony would *not* unqualifiedly support a defendant, the failure to call such a witness does *not* constitute ineffective assistance." *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005) (emphasis added). In light of the overwhelming evidence against D.C.M., it is unlikely there will be a determination on remand that he received ineffective assistance of counsel.

4

speculative to support the requirement that there is "still a substantial element of controversy existing" to avoid the determination this case is moot.

In my view, when D.C.M. turned 18 and was released from the division of youth services' supervision, this case became moot. Additionally, the principal opinion's conclusion opens D.C.M. to the possibility of much graver consequences than a public record of juvenile delinquency. Therefore, the case should be dismissed as moot.

_____
Zel M. Fischer, Judge

---

Assuming, *arguendo*, D.C.M. is determined to have received ineffective assistance of counsel on remand and the judgment is set aside by the circuit court, there is nothing prohibiting the circuit court from certifying D.C.M.—an 18-year old adult—as an adult under § 211.071.1, which reads in relevant part:

> If a petition alleges that a child between the ages of twelve and seventeen has committed an offense which would be considered a felony if committed by an adult, the court may, upon its own motion or upon motion by the juvenile officer, the child or the child's custodian, order a hearing and may, in its discretion, dismiss the petition and such child may be transferred to the court of general jurisdiction and prosecuted under the general law[.]

If D.C.M. is certified as an adult, there is a significant possibility he could receive a felony conviction. The remote possibility that D.C.M.'s juvenile delinquency judgment could be set aside based on ineffective assistance of counsel is not worth the risk that D.C.M. could be certified and tried as an adult. That D.C.M. was not originally certified as an adult and merely received a record of juvenile delinquency would most often be considered a win. In my view, this Court should not take into consideration hypothetical collateral consequences to conclude this case is not moot and turn that win into a loss.

5