

# *In the*
# *Missouri Court of Appeals*
## *Western District*

| | | |
|---|---|---|
| IN THE INTEREST OF:  T.L.L., | ) | |
| | ) | |
| Appellant, | ) | **WD86004** |
| | ) | |
| V. | ) | **OPINION FILED:** |
| | ) | **MAY 7, 2024** |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Tracy Zerman Gonzalez, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Janet Sutton, Judge and
Daniel White, Special Judge

T.L.L. appeals from an order entered by the juvenile division of the Circuit Court

of Boone County, Missouri ("juvenile court") dismissing his juvenile proceedings and

transferring him to a court of general jurisdiction for criminal prosecution as an adult

pursuant to section 211.071.[1]  On appeal, T.L.L. asserts the juvenile court erred in

dismissing his juvenile proceedings and transferring T.L.L. to a court of general

jurisdiction because T.L.L. was deprived of his rights to effective assistance of counsel

---

[1] Pursuant to section 509.520, this opinion does not include any personal identifying
information for the juvenile or witnesses.  All statutory references are to the Revised Statutes of
Missouri (2016) as currently updated by supplement.

and due process of law during his certification proceedings. We affirm the judgment of the juvenile court.

## Factual and Procedural Background

On October 19, 2022, Juvenile Officer filed a petition with the juvenile court asserting sixteen-year old T.L.L. was in need of care and treatment, pursuant to section 211.031.1(3). The petition alleged that T.L.L. committed what would be, if he were an adult, the class E felony of delivery of a controlled substance, section 579.020; and, the class D felony of stealing, section 570.030.

On November 4, 2022, the Juvenile Officer filed an amended petition, including four new allegations of offenses that would be felonies if committed by an adult. The amended petition alleged T.L.L. committed: the class A felony of assault in the first degree, section 565.050; the class A felony of unlawful use of a weapon, section 571.030; an unclassified felony of armed criminal action, section 571.015; and, the class A felony of robbery in the first degree, section 570.023.[2]

On December 19, 2022, the Juvenile Officer filed its Waiver of Jurisdiction Investigation Report ("report"), pursuant to section 211.071.6.[3] The report contained

---

[2] Under section 211.071.1, a certification hearing was required for the alleged class A felony of assault in the first degree, and class A felony of robbery in the first degree.

[3] The following non-exhaustive list must be considered by juvenile courts when determining whether a juvenile should be certified as an adult:

(1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
(2) Whether the offense alleged involved viciousness, force and violence;
(3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

information to be considered by the juvenile court in determining whether to certify T.L.L. as an adult. The report described the six felonies T.L.L. was alleged to have committed and T.L.L.'s history with the juvenile system, including seven prior referrals for delinquency. According to the report, T.L.L. had "participated in numerous services, as provided by the Juvenile Officer, including an Informal Adjustment Agreement, formal supervision, In-Home Detention, substance abuse assessments, and evaluation at the Juvenile Justice Center." Due to T.L.L.'s alleged offenses, the Juvenile Officer did "not feel that community-based services [were] appropriate for [T.L.L.], due to concerns about protection of the community." In its view, neither the juvenile court nor the Missouri Division of Youth Services ("DYS"), "would be able to effectively provide the long-term treatment and community protection that is required in this case."

On December 22, 2022, the Juvenile Officer filed a motion to dismiss the first amended petition, because T.L.L. was "beyond the rehabilitation care, treatment, and

---

(4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;
(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;
(7) The age of the child;
(8) The program and facilities available to the juvenile court in considering disposition;
(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and
(10) Racial disparity in certification.

Section 211.071.6.

3

services available to this [juvenile court], and cannot benefit further therefrom." The juvenile court held a hearing on waiver of jurisdiction on January 6, 2023. At the hearing, the juvenile court admitted the report over T.L.L.'s counsel's ("Counsel") objection. At the hearing, the Juvenile Officer presented two witnesses; T.L.L. did not present any evidence.

Deputy Juvenile Officer, P.D., wrote the report and testified about its contents. When writing the report, P.D. had spoken with T.L.L.'s parents, reviewed police reports, and reviewed DYS reports. Pursuant to the factors set forth in section 211.071.6, P.D. testified that one of the alleged offenses was a vicious and violent incident as it resulted in a victim being shot and severely injured. P.D. testified that the alleged offenses were part of a repetitive pattern and that T.L.L. had a high number of referrals to the juvenile court. P.D. explored a lot of options with T.L.L., and she "exhausted all of [the juvenile system's] options with [T.L.L.] and his supervision with our jurisdiction." P.D. opined about how T.L.L.'s home and pattern of living had a negative impact on him because he continued to receive referrals. The charges T.L.L. was alleged to have committed were "very concerning" to P.D. T.L.L. was already in juvenile detention and was previously committed to DYS; however, according to P.D., "both of those outcomes [had] not been successful for [T.L.L.]." As such, P.D. concluded all services available in the juvenile court had been exhausted.

The Juvenile Officer also testified at the hearing. The Juvenile Officer had concerns "about [T.L.L.'s] family dynamics and lack of parental supervision, and . . .

4

even parental enabling of his illegal behavior[.]" The Juvenile Officer agreed that the services through the juvenile office had been exhausted.

The juvenile court granted the Juvenile Officer's motion to dismiss and to transfer T.L.L. to a court of general jurisdiction for criminal prosecution. In its judgment, the juvenile court addressed each factor listed under section 211.071.6. With respect to each factor, the juvenile court concluded the following:

(1) Each of T.L.L.'s alleged offenses was "a serious offense which could potentially carry a lengthy prison sentence if convicted in a court of general jurisdiction."

(2) T.L.L.'s alleged offenses involved "viciousness, violence and force in that there was allegedly gunfire involved in this incident causing a victim to be shot and seriously injured." Other people in the surrounding neighborhood were also placed at risk of serious physical or fatal injury due to T.L.L.'s alleged actions.

(3) T.L.L.'s "alleged offenses of assault in the first degree, unlawful use of a weapon, armed criminal action, and robbery in the first degree are all considered offenses of [sic] against persons in which it is alleged in this case that serious personal injury resulted as the victim was shot."

(4) T.L.L. had an extensive history of delinquency and status offense referrals to the juvenile office.

(5) T.L.L.'s history included: multiple detentions at the Juvenile Justice Center, participation in the Juvenile Officer's In-Home Detention Program, and placement under DYS supervision. T.L.L. "had only been released from a facility for less than thirty days prior to his involvement in the current alleged offenses."

5

(6)  T.L.L., at the time of his most recent detention, exhibited "a reasonably high level of maturity and sophistication" primarily because he was seventeen years old. T.L.L. was not able to enroll in school given the seriousness of the allegations, and he was not participating in any educational programs during the time of his detention. Previously, T.L.L.'s mother reported T.L.L.'s behavioral problems began when he was thirteen years old, and she was concerned about the peers with whom T.L.L. associated. Further, T.L.L.'s living situation was "somewhat unstable . . . ."

(7)  T.L.L. was seventeen years old.

(8)  T.L.L. had "participated in every major service that [was] offered by the Juvenile Office in the community, and [had] also participated in services through [DYS]. The programs and services offered through the juvenile court system have been largely exhausted in this case."

(9)  The juvenile court found T.L.L. would likely not benefit from additional services provided by the juvenile system.  The juvenile court wrote:

> The juvenile has already been offered formal supervision services, substance abuse treatment, alternative educational programming and informal supervision in the community as well as having received services through [DYS].  Despite these services being offered, the juvenile has continued to receive referrals to the juvenile court.  Given the seriousness of the current allegations and the concern for community safety, neither the Juvenile Office or [DYS] is able to effectively provide the long-term treatment and community protection that is required in this case.

(10)  T.L.L.'s race was not a factor in the charge or recommendation for dismissal.

This appeal follows.

## Standard of Review

Juveniles' claims of ineffective assistance of counsel can be addressed on direct appeal if the record is sufficient. *See D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 782 (Mo. banc 2019). "So long as the juvenile receives a hearing, access to counsel, and access to his or her records, and so long as the juvenile court's decision adequately sets forth the grounds for its decision to certify such that we can review it adequately, the process is sufficient constitutionally." *C.R.B. v. Juv. Officer*, 673 S.W.3d 135, 139 (Mo. App. W.D. 2023). "[I]f the record is not sufficiently developed to allow for proper review of the issue raised the cause may need to be remanded to develop the factual basis for review of the claim." *Id.*

## Analysis

First, we note that T.L.L.'s brief fails to comply with Rule 84.04.[4] "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Duncan-Anderson v. Duncan*, 321 S.W.3d 498, 500 (Mo. App. E.D. 2010). T.L.L.'s point relied on provides:

> The juvenile division of the circuit court erred in dismissing Respondent's first amended petition and transferring Appellant to the court of general jurisdiction for prosecution under the general law because Appellant was deprived of his rights to effective assistance of counsel and due process of law during the juvenile certification proceedings— guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 10 and 18(a) of the Missouri Constitution, Section 211.211, RSMo, and Missouri Supreme Court Rule 115.01—in that (1) the standard for determining whether counsel was

---

[4] All rule references are to the Missouri Supreme Court Rules (2023).

ineffective in a certification proceeding should be the same standard applied in criminal cases; and (2) under the proper standard, the record is not clear whether Appellant's counsel was ineffective but there is a reasonable probability such that further factfinding is warranted.

T.L.L. asserts Counsel was ineffective without providing how Counsel was ineffective or explaining his legal reasoning, and thus, T.L.L. fails to comply with Rule 84.04. *See* Rule 84.04(d)(1) ("[E]ach point shall: . . . [s]tate concisely the legal reasons for the appellant's claim of reversible error; and [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."). Even if T.L.L. explained his legal reasoning, this point relied on would be multifarious because it "groups together multiple, independent claims rather than a single claim of error." *Macke v. Patton*, 591 S.W.3d 865, 869 (Mo. banc 2019) (internal quotation omitted). Throughout the argument portion of T.L.L.'s brief he asserts Counsel was ineffective for two different reasons: (1) for failing to present evidence from an expert on adolescent brain development; and, (2) for failing to present evidence from a DYS employee. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Id.* However, we exercise our discretion to review this case on the merits as T.L.L.'s argument is readily understandable. *See State v. Glaze*, 611 S.W.3d 789, 794 n.6 (Mo. App. W.D. 2020).

To begin, T.L.L. argues this case should be remanded because the "record is not complete with respect to [his] claim of ineffective assistance of counsel," relying on

8

*D.C.M.*, 578 S.W.3d at 783-85.[5]  T.L.L. requests this Court to appoint a special master pursuant to Rule 68.03 so he can present evidence that Counsel was ineffective, or for this Court to remand to the juvenile court for an evidentiary hearing.  The unique situation presented in *D.C.M.* is not present here, and thus, we find the record is sufficient to address each claim of ineffective assistance of counsel.

T.L.L. urges this Court to adopt the *Strickland v. Washington*, 466 U.S. 668 (1984), standard for ineffective assistance of counsel claims arising out of juvenile certification proceedings.  "Missouri courts have not yet decided whether claims of ineffective assistance of counsel at certification hearings are determined by applying the meaningful hearing standard or the *Strickland* standard."  *C.R.B.*, 673 S.W.3d at 139 (internal citation omitted).  Either standard may be applicable.  *See In re K.M.F.*, 668 S.W.3d 302, 308 (Mo. App. E.D. 2023).  Here, like in other prior cases, the result would be the same under either standard.

Under the "meaningful hearing" standard, we examine "whether the attorney was effective in providing his client with a meaningful hearing based on the record."  *C.R.B.,*

---

[5] In *D.C.M.*, the Missouri Supreme Court declined to address D.C.M.'s ineffective assistance of counsel claim because the record was insufficient.  *D.C.M.*, 578 S.W.3d at 779. D.C.M. claimed his counsel was ineffective for failing to investigate and call a key witness to testify at D.C.M.'s adjudication hearing.  *Id*. at 779.  The record was clear that the key witness was next to D.C.M. when D.C.M. allegedly made the threatening statement that was the factual basis for his underlying charge.  *Id.* at 783.  The record, however, was silent about what the key witness's testimony would have been or whether D.C.M.'s attorney would have been able to locate the witness.  *Id.*  It was possible the key witness's testimony could have unequivocally supported D.C.M.'s defense, while it was also possible his testimony could have cast doubt on the defense.  Evidently, the key witness's testimony could impact the outcome of D.C.M.'s delinquency proceeding, as such, the court remanded the case for an evidentiary hearing on the issue.  *Id.*

673 S.W.3d at 139 (internal quotation omitted). Here, Counsel cross-examined both witnesses, objected to the admission of the report as hearsay, and objected to vague testimony about why transferring T.L.L. to a court of general jurisdiction would be the right recommendation. During closing argument Counsel urged the juvenile court to keep T.L.L. in the juvenile system to "give him additional opportunities to address trauma." Counsel also stated T.L.L. did not have "any sort of issues in terms of substance abuse since leaving [DYS] and was able to address a lot of those kinds of things while in [DYS]." We conclude that this provided T.L.L. with a meaningful hearing. *See id.* at 140 (finding C.R.B. had a meaningful hearing where counsel cross-examined witnesses, objected to testimony and the admission of the written report, and argued in closing C.R.B. would be better served in the juvenile system).

The *Strickland* standard is more stringent. Under the *Strickland* standard, T.L.L. must demonstrate by a preponderance of the evidence that: (1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would have under similar circumstances; and (2) T.L.L. suffered prejudice as a result. *See D.C.M.*, 578 S.W.3d at 784 n.11 (citing *Strickland*, 466 U.S. at 668). "If either the performance prong or the prejudice prong is not met, then the court need not consider the other, and the movant's claim must fail." *Jindra v. State*, 580 S.W.3d 635, 641 (Mo. App. W.D. 2019) (internal quotation omitted). "In certification cases, prejudice amounts to a reasonable probability that he would not have been certified to be prosecuted as an adult but for counsel's ineffectiveness." *C.R.B.*, 673 S.W.3d at 140 (internal quotation omitted).

*Expert on adolescent brain development*

T.L.L. argues evidence from an expert on adolescent brain development could have led the juvenile court to conclude T.L.L. should not be certified to face the charges as an adult. T.L.L. asserts testimony from an expert explaining how various aspects of T.L.L.'s life—his placement in protective custody, the murder of his girlfriend, and T.L.L.'s family dynamics—affected him, and the juvenile court could have concluded that T.L.L. was a proper subject to be dealt with under the juvenile code. We disagree.

On cross-examination, Counsel elicited testimony from P.D. about T.L.L.'s background. During her twenty-seven years of service as a Deputy Juvenile Officer, P.D. received training on child brain development. P.D. agreed T.L.L. experienced traumatic events, such as being placed in protective custody when he was thirteen years old and experiencing the loss of his girlfriend as she was murdered. Further, P.D. agreed that T.L.L. was a high-need juvenile. Clearly the juvenile court heard evidence about T.L.L.'s background. T.L.L., however, asserts this testimony "did not close the circle, complete the thought, or articulate the argument in and of itself" as to why T.L.L., by virtue of his age and development, should not be transferred to the court of general jurisdiction. We find there is no reasonable probability the result of T.L.L.'s certification hearing would be different had Counsel presented evidence from an expert on adolescent brain development. *See C.R.B.*, 673 S.W.3d at 140.

"Although the criteria listed in section 211.071.6 are not exclusive and the juvenile court need not give equal weight to each one, the first three factors contain some of the most critical considerations in certification and *the seriousness of the offense dominates*

11

*our inquiry*." *In re K.M.F.*, 668 S.W.3d at 310 (emphasis added) (internal citations and quotations omitted). Here, the juvenile court found the allegations against T.L.L. involved serious offenses. Section 211.071.6(1). The alleged offenses involved "viciousness, violence and force" and during the incident there was allegedly gunfire, causing a victim to be shot and seriously injured, further placing other individuals at "risk of serious physical or fatal injury." Section 211.071.6(2). Moreover, T.L.L.'s alleged offenses of assault in the first degree, unlawful use of a weapon, armed criminal action, and robbery in the first degree are all offenses against persons which are to be given greater weight because a victim was injured. Section 211.071.6(3). Although T.L.L. argues expert testimony about how his background impacted him would have changed the outcome of the certification proceedings, "[n]one of the first three factors consider the juvenile's background." *In re K.M.F.*, 668 S.W.3d at 310. "Given the seriousness of the current allegations and the concern for community safety," the juvenile court concluded T.L.L. could no longer be served by the juvenile court system. Further, the evidence established that T.L.L. had a repetitive pattern of offenses which, together with T.L.L.'s extensive history with the juvenile justice system and failure to positively respond to the services offered, supported a finding that he was beyond rehabilitation under the juvenile code. T.L.L. has failed to show he was prejudiced by Counsel's alleged error, and thus, this claim of ineffective assistance of counsel must fail. *See Jindra*, 580 S.W.3d at 641.

**DYS Employee**

Additionally, T.L.L. argues testimony from a DYS employee about the services offered by DYS, the DYS programs available to T.L.L., and T.L.L.'s progress while in

12

DYS's custody could have changed the juvenile court's assessment of the totality of the circumstances. We disagree.

As noted, the first three factors under section 211.071.6 contain some of the most critical considerations in certification, and the juvenile court found these factors, as applied to T.L.L., favored certification. *See In re K.M.F.*, 668 S.W.3d at 310. When reaching its conclusion to certify T.L.L. as an adult, the juvenile court considered the programs and facilities available to the juvenile court, and whether T.L.L. could benefit from the programs available. Section 211.071.6(8)-(9). After reviewing the evidence presented at the hearing, the juvenile court found T.L.L. would likely not benefit from services provided by the juvenile office or DYS. T.L.L. had already "participated in every major service that [was] offered by the Juvenile Office in the community, and [had] also participated in services through [DYS]. The programs and services offered through the juvenile court system [had] largely been exhausted in this case." We find there is no reasonable probability the outcome of the certification proceeding would have been different had Counsel presented evidence from a DYS employee about its services and T.L.L.'s progress. Despite the services offered, "[T.L.L.] [had] continued to receive referrals to the juvenile court." Because of the seriousness of the current allegations against T.L.L. and the concern for community safety, the juvenile court found neither the Juvenile Officer nor DYS could "effectively provide the long-term treatment and community protection that is required in this case." T.L.L. has failed to show he was prejudiced by Counsel's alleged error, and thus, this claim of ineffective assistance of counsel must fail. *See Jindra*, 580 S.W.3d at 641.

13

## Conclusion

We affirm the judgment of the juvenile court.

_____

Gary D. Witt, Chief Judge Presiding

All concur

14