

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF A.M.S., | ) | |
| | ) | |
| Appellant, | ) | WD86022 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | MAY 7, 2024 |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Tracy Zerman Gonzalez, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Jane Sutton, Judge and
Daniel White, Special Judge

A.M.S. appeals from an order entered by the juvenile division of the Circuit Court

of Boone County, Missouri ("juvenile court") dismissing his juvenile proceedings and

transferring him to a court of general jurisdiction for criminal prosecution as an adult

pursuant to section 211.071.[1]  On appeal, A.M.S. asserts the juvenile court erred in

dismissing his juvenile proceedings and transferring A.M.S. to a court of general

jurisdiction because A.M.S. was deprived of his rights to effective assistance of counsel

---

[1] Pursuant to section 509.520, this opinion does not include any personal identifying information for the juvenile or any witnesses.  All statutory references are to the Revised Statutes of Missouri (2016) as currently updated by supplement unless otherwise noted.

and due process of law during his certification proceedings.  We affirm the judgment of the juvenile court.

**Factual and Procedural Background**

On October 26, 2022, Juvenile Officer filed a petition with the juvenile court asserting seventeen-year old A.M.S. was in need of care and treatment, pursuant to section 211.031.1(3).  The petition alleged that A.M.S. committed, what would be if he were an adult, the class A felony of assault in the first degree, section 565.050;[2] the class A felony of unlawful use of a weapon, section 571.030; and, the unclassified felony of armed criminal action, section 571.015.

On November 22, 2022, the Juvenile Officer filed an amended petition, including a new allegation that A.M.S. committed, if he were an adult, the class D felony of receiving stolen property, section 570.030.1(3).  On December 16, 2022, the Juvenile Officer filed its Waiver of Jurisdiction Investigation Report ("report"), pursuant to section 211.071.6.[3]  The report contained information to be considered by the juvenile court in

---

[2] Under section 211.071.1, a certification hearing was required for this alleged offense.

[3] The following non-exhaustive list must be considered by juvenile courts when determining whether a juvenile should be certified as an adult:

> (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
> (2) Whether the offense alleged involved viciousness, force and violence;
> (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
> (4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
> (5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

2

determining whether to certify A.M.S. as an adult. The sources of information for the report included: A.M.S., A.M.S.'s father, Division of Youth Services ("DYS") staff and records, Columbia Police Department records, Missouri Case.net records, juvenile court staff and records, and the Juvenile Justice Center ("JJC") staff and records. The report included the following information:

A.M.S. was alleged to have committed what would have been four felonies if he had been an adult. A.M.S.'s alleged offenses involved viciousness and violence. A.M.S. was alleged to have shot the victim in the chest during a drug transaction. The charges arising from this constituted: assault in the first degree, unlawful use of a weapon, and armed criminal action. A.M.S. was also alleged to have possessed stolen property.[4] Additionally, other individuals were placed in immediate risk of serious or physical injury, as the alleged shooting occurred in a residential area near a community park with a playground.

Prior to the current offenses, A.M.S. had received fifteen separate referrals to the Juvenile Officer; fourteen were for delinquency, and one was for abuse and neglect.

---

(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;
(7) The age of the child;
(8) The program and facilities available to the juvenile court in considering disposition;
(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and
(10) Racial disparity in certification.

Section 211.071.6.
[4] In the First Amended Petition, the Juvenile Officer asserts A.M.S. was in possession of a 9mm Smith and Wesson handgun.

A.M.S. had been offered an extensive array of services and programs through the juvenile office, Compass Health and the Navig8 program,[5] Boone County Children's Division, and DYS. A.M.S. was generally uncooperative with treatment and only minimally participated in most of the programs he was offered. A.M.S refused to work in the programs, refused to do school work, refused to follow rules and conditions of supervision such as curfew, and had frequent attendance issues in school and treatment programs. Additionally, A.M.S did not maintain contact with juvenile authorities, he was discharged from various programs due to his behavior and for the safety of other children in the programs, he left his placements and primarily lived with his girlfriend, and he failed to appear at court hearings. The juvenile office had no major services that had not been offered to A.M.S. to address his issues. Growing up, A.M.S. attended a variety of schools and he frequently exhibited disruptive behaviors. Throughout A.M.S.'s schooling, he gravitated towards strong negative peers who also had referrals to the juvenile office. When A.M.S. was at the JJC, he struggled with his attitude and struggled to take accountability for his actions. A.M.S. was "able to find success when the staff [maintained] consistent boundaries and guidelines for the residents to follow." Based on the allegation of A.M.S. shooting the victim, if such allegation were true, it "would indicate a level of severity that juvenile court services would not be able to effectively address." As such, the Juvenile Officer believed it had exhausted all the resources of the juvenile court.

---

[5] This is an adolescent treatment program for those with substance abuse problems.

On December 20, 2022, the Juvenile Officer filed a motion to dismiss the first amended petition, because A.M.S. was "beyond the rehabilitation care, treatment, and services available to this [juvenile court], and cannot benefit further therefrom." On December 30, 2022, the juvenile court held a hearing on waiver of jurisdiction. At the hearing, the Juvenile Officer presented one witness; A.M.S. did not present any evidence.

Deputy Juvenile Officer J.K., wrote the report and testified about its contents. Pursuant to the factors set forth in section 211.071.6, J.K. testified that the alleged offenses involved viciousness, force, and violence as the alleged victim in A.M.S.'s case was shot in the chest with a firearm. A.M.S. had a very extensive history with the juvenile office, and he had formal adjudications in juvenile court. J.K. opined that there was a pattern with A.M.S.'s behavior as one previous incident involved A.M.S. shooting people with a BB gun. Some of the services offered by the juvenile office that A.M.S. participated in were: informal adjustments with and without supervision, formal supervision with drug testing and community service, day treatment through the juvenile office, cognitive behavioral intervention programming, in-home detention, and the Intensive Intervention Model Program. J.K. testified A.M.S.'s participation with the Intensive Intervention Model Program was unsuccessful as there were periods of times where A.M.S. lost contact with the juvenile office. Further, A.M.S. would not follow curfew rules, and he would not attend substance abuse services. A.M.S. struggled with "keeping in contact, going to school like he was supposed to, following the conditions of not having firearms, [and] submitting to drug testing."

5

A.M.S. had also been committed to DYS. While A.M.S. was in DYS placement, his mother passed away. A.M.S. was allowed to be with her prior to her death and was able to attend her funeral services. J.K. testified A.M.S. "had a lot of instability with his home life growing up." A.M.S. bounced around among family members, and he went to a variety of schools "due to behaviors and the choices that he was making while he was [at school]." A.M.S. had a lot of history with grief in his life as his mother passed away and his father was not around when A.M.S. was younger. J.K. did not think there were any more services the juvenile office could provide. J.K. testified that, "[t]here are multiple things that were tried, and none of it just -- none of it worked. And I don't think that keeping him within the juvenile system is going to be appropriate for him. I think he could get better help in the adult world."

The juvenile court granted the Juvenile Officer's motion to dismiss and to transfer A.M.S. to a court of general jurisdiction for criminal prosecution. In its judgment, the juvenile court addressed each factor listed under section 211.071.6. With respect to each factor, the juvenile court concluded the following:

(1) Each of A.M.S.'s alleged offenses "are serious offenses which potentially carry lengthy adult prison sentences if convicted in a court of general jurisdiction."

(2) A.M.S.'s alleged offenses involved "viciousness, force, and violence in that the alleged victim was shot in the chest with a firearm." Other people in the surrounding neighborhood were also placed in immediate risk of serious or fatal injury as the alleged shooting happened in a residential area that backs up to a community park with a playground.

6

(3) A.M.S.'s alleged offenses of assault in the first degree, armed criminal action, and unlawful use of a weapon are all offenses against a person. The offense of receiving stolen property is a property offense.

(4) A.M.S. had an extensive history of prior delinquency referrals to the Juvenile Officer.

(5) A.M.S. had fourteen prior delinquency referrals. A.M.S. had been offered all of the major services with the Juvenile Officer and had also been offered services through DYS and the Children's Division.

(6) A.M.S., at the time of his most recent detention, exhibited "a level of maturity and sophistication in his pattern of living . . . ." A.M.S.'s living situation had been somewhat unstable. A.M.S. was supposed to be participating in online schooling through Columbia Public Schools, but he was not enrolled as a traditional student at the time of his detention. At the time of A.M.S.'s detention, he was "leading a lifestyle more consistent with that of an independent adult."

(7) A.M.S. was seventeen years old.

(8) A.M.S. received informal supervision, formal supervision, the Intensive Intervention Model Program, and prior commitment to DYS. A.M.S. had been offered every major service available through the juvenile court system, and the programs and facilities "have been exhausted in this case."

(9) A.M.S. would not likely benefit from the services available to the juvenile court as he had already been offered all major services available prior to his commitment

7

to DYS. Further, A.M.S. "had only been released from residential treatment for less than two months prior to being referred to the current alleged offenses."

(10) A.M.S.'s race was not a factor in the charge or recommendation for dismissal.

This appeal follows.

## Standard of Review

Juveniles' claims of ineffective assistance of counsel can be addressed on direct appeal if the record is sufficient. *See D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 782 (Mo. banc 2019). "So long as the juvenile receives a hearing, access to counsel, and access to his or her records, and so long as the juvenile court's decision adequately sets forth the grounds for its decision to certify such that we can review it adequately, the process is sufficient constitutionally." *C.R.B. v. Juv. Officer*, 673 S.W.3d 135, 139 (Mo. App. W.D. 2023). "[I]f the record is not sufficiently developed to allow for proper review of the issue raised the cause may need to be remanded to develop the factual basis for review of the claim." *Id.*

## Analysis

First, we note that A.M.S.'s brief fails to comply with Rule 84.04.[6] "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not

---

[6] All rule references are to the Missouri Supreme Court Rules (2023).

8

been made." *Duncan-Anderson v. Duncan*, 321 S.W.3d 498, 500 (Mo. App. E.D. 2010).

A.M.S.'s point relied on provides:

> The juvenile division of the circuit court erred in dismissing Respondent's first amended petition and transferring Appellant to the court of general jurisdiction for prosecution under the general law because Appellant was deprived of his rights to effective assistance of counsel and due process of law during the juvenile certification proceedings— guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 10 and 18(a) of the Missouri Constitution, Section 211.211, RSMo, and Missouri Supreme Court Rule 115.01—in that (1) the standard for determining whether counsel was ineffective in a certification proceeding should be the same standard applied in criminal cases; and (2) under the proper standard, the record is not clear whether Appellant's counsel was ineffective but there is a reasonable probability such that further factfinding is warranted.

In his single point relied on, A.M.S. asserts his counsel ("Counsel") was ineffective without providing how Counsel was alleged to be ineffective or explaining his legal reasoning, and thus, A.M.S. fails to comply with Rule 84.04. *See* Rule 84.04(d)(1) ("[E]ach point shall: . . . [s]tate concisely the legal reasons for the appellant's claim of reversible error; and [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."). However, we exercise our discretion to review this case on the merits as A.M.S.'s argument is readily understandable. *See State v. Glaze*, 611 S.W.3d 789, 794 n.6 (Mo. App. W.D. 2020).

A.M.S. asserts he was deprived of his right to the effective assistance of counsel at his certification hearing and argues "because the record neither clearly supports nor clearly refutes this claim, further fact finding is required." A.M.S. urges this Court to appoint a special master or remand the case, similar to what was done in *D.C.M.*, 578

9

S.W.3d at 783-85.[7] The unique situation presented in *D.C.M.* is not present here, and thus, we find the record is sufficient to address A.M.S.'s claim of ineffective assistance of counsel.

A.M.S. asks this Court to adopt the *Strickland v. Washington*, 466 U.S. 668 (1984), standard for analyzing claims of ineffective assistance of counsel arising out of juvenile certification proceedings. "Missouri courts have not yet decided whether claims of ineffective assistance of counsel at certification hearings are determined by applying the meaningful hearing standard or the *Strickland* standard." *C.R.B.*, 673 S.W.3d at 139 (internal citation omitted). Either standard may be applicable. *See In re K.M.F.*, 668 S.W.3d 302, 308 (Mo. App. E.D. 2023). Here, like in prior cases, the result is similar under either standard.

Under the "meaningful hearing" standard, we examine "whether the attorney was effective in providing his client with a meaningful hearing based on the record." *C.R.B.,* 673 S.W.3d at 139 (internal quotation omitted). In this case, Counsel cross-examined the only witness and argued during the closing for the juvenile court to retain jurisdiction

---

[7] In *D.C.M.*, the Missouri Supreme Court declined to address D.C.M.'s ineffective assistance of counsel claim because the record was insufficient. *D.C.M.*, 578 S.W.3d at 779. D.C.M. claimed his counsel was ineffective for failing to investigate and call a key witness to testify at D.C.M.'s adjudication hearing. *Id*. at 779. The record was clear that the key witness was next to D.C.M. when D.C.M. allegedly made the threatening statement that was the factual basis for his underlying charge. *Id.* at 783. The record, however, was silent about what the key witness's testimony would have been or whether D.C.M.'s attorney would have been able to locate the witness. *Id.* It was possible the key witness's testimony could have unequivocally supported D.C.M.'s defense, while it was also possible his testimony could have cast doubt on the defense. Evidently, the key witness's testimony could impact the outcome of D.C.M.'s delinquency proceeding, as such, the court remanded the case for an evidentiary hearing on the issue. *Id.*

over A.M.S. as there are programs available to address A.M.S.'s issues. We conclude this provided A.M.S. with a meaningful hearing. *Compare C.R.B.,* 673 S.W.3d at 139 (holding there was a meaningful hearing where counsel cross-examined a witness, objected to testimony, and argued in its closing that the juvenile would be better served in the juvenile system), *with In re J.M.B.*, 939 S.W.2d 53, 56 (Mo. App. E.D. 1997) (holding there was not a meaningful hearing where counsel did little "beyond appear for the hearing.").

The *Strickland* standard is more stringent. Under the *Strickland* standard, A.M.S. must demonstrate by a preponderance of the evidence that: (1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would have under similar circumstances; and (2) A.M.S. suffered prejudice as a result. *See D.C.M.*, 578 S.W.3d at 784 n.11 (citing *Strickland*, 466 U.S. at 668). "In certification cases, prejudice amounts to a reasonable probability that he would not have been certified to be prosecuted as an adult but for counsel's ineffectiveness." *C.R.B.*, 673 S.W.3d at 140 (internal quotation omitted).

A.M.S. asserts Counsel was ineffective for failing to present evidence from an expert on adolescent brain development. A.M.S. asserts this expert could have explained how various events in A.M.S.'s life —his mother's death, his father's incarceration, his unstable home life, and his drug use—affected him. According to A.M.S., if this evidence was presented, "there would have been a strong basis in the record for the [juvenile court] to conclude that [A.M.S.] could be rehabilitated under the juvenile code . . . ." We disagree.

11

"Although the criteria listed in section 211.071.6 are not exclusive and the juvenile court need not give equal weight to each one, the first three factors contain some of the most critical considerations in certification and *the seriousness of the offense dominates our inquiry*." *In re K.M.F.*, 668 S.W.3d at 310 (emphasis added) (internal citations and quotations omitted). Here, the juvenile court found the first three factors favor certification. Specifically, the juvenile court found the allegations against A.M.S. involved serious offenses. Section 211.071.6(1). The alleged offenses involved "viciousness, force, and violence" as the alleged victim was shot in the chest with a firearm during a drug transaction, and other individuals "were placed in immediate risk of serious physical or fatal injury, as the shooting allegedly occurred in a residential area that backs up to a community park with a playground in direct proximity of the shooting." Section 211.071.6(2). A.M.S.'s alleged offense of receiving stolen property, as he possessed a stolen handgun, would be considered a property offense. However, A.M.S.'s alleged offenses of assault in the first degree, armed criminal action, and unlawful use of a weapon are all offenses against a person and are to be given greater weight because they resulted in the serious injury of a victim. Section 211.071.6(3). Although A.M.S. argues expert testimony about how various events in A.M.S.'s life impacted him would have changed the outcome of the certification proceedings, "[n]one of the first three factors consider the juvenile's background." *In re K.M.F.*, 668 S.W.3d at 310. The juvenile court concluded it was unlikely A.M.S. "would benefit from the services available to the juvenile court." Further, the evidence established that A.M.S. had a repetitive pattern of offenses that, together with A.M.S.'s extensive history with the

12

juvenile justice system and failure to positively respond to the extensive myriad of services offered to him, supported a finding that he was beyond rehabilitation under the juvenile code. A.M.S. has failed to show he was prejudiced by Counsel's alleged error,[8] and thus, his claim of ineffective assistance of counsel must fail.

### Conclusion

We affirm the judgment of the juvenile court.

_____

Gary D. Witt, Chief Judge, Presiding

All concur

---

[8] A.M.S. incorrectly asserts that he cannot be required to "fully and finally establish prejudice at this juncture, as evidence of deficient performance is a necessary predicate to a showing of prejudice." It is well established that we do not need to consider both prongs of the *Strickland* test if one of them fails. *See Jindra v. State*, 580 S.W.3d 635, 641 (Mo. App. W.D. 2019) ("If either the performance prong or the prejudice prong is not met, then the court need not consider the other, and the movant's claim must fail.").

13