

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.C., | ) | |
| | ) | |
| Appellant, | ) | WD86530 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | AUGUST 27, 2024 |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Tracy Zerman Gonzalez, Judge

Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding, Lisa White Hardwick, Judge and Gary D. Witt, Judge

D.L.C. appeals from an order entered by the juvenile division of the Circuit Court of Boone County, Missouri ("juvenile court") dismissing his juvenile proceedings and transferring him to a court of general jurisdiction for criminal prosecution as an adult pursuant to section 211.071.[1] On appeal, D.L.C. asserts the juvenile court erred in dismissing his juvenile proceedings and transferring D.L.C. to a court of general jurisdiction because he was deprived of his rights to effective assistance of counsel and

---

[1] Pursuant to section 509.520, this opinion does not include any personal identifying information for the juvenile or witness. All statutory references are to the Revised Statutes of Missouri (2016) as currently updated by supplement unless otherwise noted.

due process of law during his certification proceedings.  We affirm the judgment of the juvenile court.

## Factual and Procedural Background

On May 15, 2023, Juvenile Officer filed a petition with the juvenile court asserting seventeen-year-old D.L.C. was in need of care and treatment pursuant to section 211.031.1(3).  The petition alleged that D.L.C. committed what would be, if he were an adult:  the class A felony of murder in the second degree, section 565.021; the class A felony of assault in the first degree, section 565.050; the felony of armed criminal action, section 571.015; the class B felony of attempted robbery in the first degree, section 570.023; the class E felony of resisting an arrest, section 575.150; and, the class A misdemeanor of leaving the scene of an accident, section 577.060.[2]  On July 11, 2023, the Juvenile Officer filed its Waiver of Jurisdiction Investigation Report ("report"), pursuant to section 211.071.6.[3]  The report contained information to be considered by the juvenile

---

[2] Under section 211.071.1, a certification hearing was required for D.L.C.'s alleged offenses of:  the class A felony of murder in the second degree, and the class A felony of assault in the first degree.

[3] When determining whether a juvenile should be certified as an adult, juvenile courts must consider the following non-exhaustive list:

(1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
(2) Whether the offense alleged involved viciousness, force and violence;
(3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
(4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;
(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;

court when it determined whether to certify D.L.C. to be tried as an adult. The sources of information for the report included: Columbia Police Department records; Boone County Sheriff's Department records; Missouri Case.net records; juvenile court staff and records; Robert L. Perry Juvenile Justice Center ("Juvenile Justice Center") staff and records; and Division of Youth Services ("DYS") staff and records. The report included the following information:

On November 2, 2020, at the age of fifteen, D.L.C. was alleged to have committed, if he were an adult, five felonies and one misdemeanor. The alleged offenses involved viciousness, force, and violence. D.L.C. allegedly arranged a drug deal, with the goal of buying marijuana and a gun. D.L.C. contacted a "fellow gang member" to assist him with this transaction, and D.L.C. "referred to [the transaction] as a 'stain,' which is street language for a robbery." During the attempted robbery, two individuals were shot and one died from his injuries. The alleged offenses arising from this alleged robbery constituted murder in the second degree, assault in the first degree, and attempted robbery in the second degree; all of which are crimes against persons.

D.L.C. had received twenty-one prior referrals to the Juvenile Officer starting at age eight. D.L.C. had received the following services over the course of his referrals to

---

(7) The age of the child;
(8) The program and facilities available to the juvenile court in considering disposition;
(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and
(10) Racial disparity in certification.

Section 211.071.6.

3

the Juvenile Officer: informal services, informal supervision, formal supervision, curfew, assignments, programming, drug testing, mental health services, community service work, detention and an evaluation at the Juvenile Justice Center, Juvenile Officer's in-home detention program, stayed commitment to DYS, intensive intervention model program, two prior waiver of jurisdiction investigations, and two commitments to DYS. During one of D.L.C.'s residential treatment placements, he worked on a comprehensive individual treatment plan that had the following goals: address grief and develop coping skills, peer relations, decision making, safety, engage with stable elements, build leadership skills, sexual appropriate behaviors, and education. D.L.C. also participated in individual counseling and family therapy with his mother. Further, D.L.C. obtained a high school diploma.

D.L.C. had spent a significant portion of his life in at least four different residential facilities, and had been placed in their most secure placements. D.L.C. had twice absconded from custody. D.L.C. is well-known to law enforcement because of his involvement in delinquent and illegal behaviors, and is believed to be associated with "the East Side gang." D.L.C. had "received all of the services available to the juvenile court," and the services, "had no impact in curtailing [D.L.C.'s] involvement in delinquent and illegal behaviors."

On July 19, 2023, the Juvenile Officer filed a motion to dismiss the first amended petition because D.L.C. was "beyond the rehabilitation care, treatment and services" available to the juvenile court, and there were no additional juvenile services that could benefit D.L.C. On July 28, 2023, the juvenile court held a hearing on waiver of

4

jurisdiction. At the hearing, the Juvenile Officer presented one witness and D.L.C. did not present any evidence.

Chief Juvenile Officer R.M., wrote the report and testified regarding its contents. Pursuant to the factors set forth in section 211.071.6, R.M. testified that D.L.C.'s alleged offenses involved viciousness, force, and violence. R.M. stated D.L.C. was alleged "to have committed the most serious offense, which would be a murder," and testified there are a total of five felonies alleged, three of which are crimes against a person. D.L.C. had a very extensive history with the juvenile office, and he had two prior adjudications for offenses that would be felonies if committed by an adult. While under the juvenile court's jurisdiction, D.L.C. received various services such as: informal and formal supervision, informal adjustment agreements, intensive intervention model program, in-home detention, mental health services, and detention and evaluation at the Juvenile Justice Center. Additionally, R.M. testified that D.L.C. had two prior commitments to DYS. During D.L.C.'s second DYS commitment, D.L.C. absconded from his placement and was taken into custody in Columbia, Missouri, where he then absconded from that placement and was subsequently placed elsewhere. R.M. "struggle[d] to think of another child who's had as many services as [D.L.C.] has had in the last 10 years through the juvenile court." R.M. testified that this is the third waiver of juvenile court jurisdiction investigation for D.L.C., with it being the second one R.M. has completed. R.M. testified D.L.C. is now eighteen years old and has "lived a pattern of delinquent behavior, alleged gang activity, known to carry firearms . . . his level of delinquent behavior at this point is very sophisticated." According to R.M., there are no additional services that could be

5

offered to D.L.C., "that would be effective in curtailing his involvement in delinquent illegal behavior."

The juvenile court granted the Juvenile Officer's motion to dismiss and to transfer D.L.C. to a court of general jurisdiction for criminal prosecution as an adult. The findings of the juvenile court, pursuant to section 211.071.6, were as follows:

(1): D.L.C.'s alleged offenses were "serious offenses which potentially carry lengthy adult prison sentences for the purpose of safeguarding community protection."

(2): The alleged offenses involved viciousness, force, and violence as two individuals were shot, one of whom died from his injuries. The shootings occurred at a park which was busy with families and children involved in various recreational activities nearby.

(3): D.L.C.'s alleged offenses of murder in the second degree, assault in the first degree, and attempted robbery in the second degree are all crimes against a person.

(4): D.L.C. had an extensive history of prior referrals and received various services through the Juvenile Justice Center and DYS.

(5): D.L.C. had twenty-one prior referrals to the Juvenile Officer. These referrals included: allegations of raping a woman at gunpoint in a shopping mall dressing room; felony burglary by entering a home with a deadly weapon and stealing items; unlawful use of a weapon by pointing a firearm at another juvenile; stealing a firearm and possession of a controlled substance; assault; robbing a pizza delivery driver; breaking into a home and damaging property and stealing an item; inappropriate touching of a five year old relative; inappropriately touching another student at school; damaging a school

6

by shooting it with a BB gun; and multiple referrals for being insubordinate, defiant, and exhibiting disrespectful behavior at home and at school.

(6): D.L.C. spent a significant portion of his life in residential facilities. D.L.C. was released from custody in the beginning of April 2023, and nearly three weeks later he was taken into custody for the current alleged offenses. During June and July of 2023, D.L.C. twice absconded from custody, once by assaulting staff members, stealing their keys, and locking the staff members in a bathroom. D.L.C. was leading a lifestyle more consistent with the lifestyle of an adult.

(7): D.L.C. was now eighteen years old.

(8): There were no additional services or facilities available through the juvenile justice system that could benefit D.L.C.

(9): D.L.C. received all services available through the juvenile court.

(10): D.L.C.'s race was not a factor in the charge or recommendation for dismissal. This appeal follows.

## Standard of Review

Juveniles' claims of ineffective assistance of counsel can be addressed on direct appeal so long as the record is sufficient to allow for proper review of the claim. *See C.R.B. v. Juv. Officer*, 673 S.W.3d 135, 138 (Mo. App. W.D. 2023). If the record is insufficient, the cause may need to be remanded to develop the factual basis for review of the claim. *Id.* at 139. "So long as the juvenile receives a hearing, access to counsel, and access to his or her records, and so long as the juvenile court's decision adequately sets

7

forth the grounds for its decision to certify such that we can review it adequately, the process is sufficient constitutionally." *Id.*

## Analysis

To begin, we note D.L.C.'s brief fails to comply with Rule 84.04.[4] Compliance with Rule 84.04 is mandatory. *See City of St. Louis v. State*, 682 S.W.3d 387, 397 n.7 (Mo. banc 2024). D.L.C.'s single point relied on provides:

> The Juvenile Division of the Circuit Court erred in dismissing Respondent's petition and transferring D.L.C. to the court of general jurisdiction for prosecution under the general law because D.L.C. was deprived of his rights to effective assistance of counsel and due process of law during the juvenile certification proceedings, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 10 and 18(a) of the Missouri Constitution, Section 211.211 RSMo, and Missouri Supreme Court Rule 115.01, in that (1) the standard for determining whether counsel was ineffective in a certification proceeding should be the same standard applied in criminal cases, and (2) under the proper standard, the record establishes that Appellant's certification counsel was constitutionally ineffective such that Appellant is entitled to relief.

D.L.C. asserts his counsel ("Counsel") was ineffective without stating how Counsel was alleged to be ineffective or explaining his legal reasoning, and thus, D.L.C. fails to comply with Rule 84.04. *See* Rule 84.04(d)(1) ("[E]ach point shall: . . . [s]tate concisely the legal reasons for the appellant's claim of reversible error; and [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."). Even if D.L.C. explained his legal reasoning, his point relied on would be multifarious as it "groups together multiple, independent claims rather than a

---

[4] All rule references are to the Missouri Supreme Court Rules (2023).

8

single claim of error." *T.L.L. v. Juv. Officer*, 688 S.W.3d 615, 621 (Mo. App. W.D. 2024) (internal citation omitted). D.L.C. asserts Counsel was ineffective for "fail[ing] to introduce evidence or otherwise provide mitigating information on D.L.C.'s behalf at certification." In the argument portion of D.L.C.'s brief, he elaborates that Counsel was ineffective for: (1) failing to cross-examine R.M.; (2) failing to call a witness from DYS to testify about D.L.C.'s successes; and, (3) failing to call a witness and/or present evidence about how D.L.C.'s long history of system involvement affected his development and behaviors. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Id.* Despite D.L.C.'s briefing deficiencies, we exercise our discretion to review this case on the merits. *See City of St. Louis*, 682 S.W.3d at 397 n.7.

D.L.C. asserts he was deprived of his rights to effective assistance of counsel and due process of law, and "[b]ecause the record clearly supports this claim, further fact finding is not required and this Court should grant D.L.C. relief . . . ." We agree that no further fact finding is required for us to address D.L.C.'s claims.

D.L.C. urges this Court to adopt the *Strickland v. Washington*, 466 U.S. 668 (1984), standard for review of claims of ineffective assistance of counsel in juvenile matters, because D.L.C.'s certification hearing constituted a critical stage in criminal litigation. Our courts have not decided whether the *Strickland* standard or the "meaningful hearing standard" should apply to claims of ineffective assistance of counsel at juvenile certification hearings. *See D.C.M. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 784 n.11 (Mo. banc 2019). Under the *Strickland* standard, D.L.C. must establish by a

9

preponderance of the evidence that: (1) Counsel failed to exercise the level of skill and diligence of that of a reasonably competent attorney under similar circumstances, and (2) D.L.C. suffered prejudice as a result. *See J.N.W. v. Juv. Officer*, 643 S.W.3d 618, 635 (Mo. App. W.D. 2022) (citing *Strickland*, 466 U.S. at 687). To establish prejudice, D.L.C. must demonstrate that there is a reasonable probability that he would not have been certified to be prosecuted as an adult, but for Counsel's deficient performance. *See C.R.B.*, 673 S.W.3d at 140. "If either the performance prong or the prejudice prong is not met, then the court need not consider the other, and the movant's claim must fail." *Jindra v. State*, 580 S.W.3d 635, 641 (Mo. App. W.D. 2019) (internal quotation omitted). Conversely, "[t]he meaningful hearing standard is less strident, requiring only that the record establish that an attorney provided his client with a meaningful hearing." *J.N.W.*, 643 S.W.3d at 635 (internal quotation marks and citation omitted). Even if the more demanding *Strickland* standard were to apply to claims of ineffective assistance of counsel at a certification hearing, D.L.C. has not established his Counsel was ineffective because D.L.C. has not demonstrated he was prejudiced by Counsel's performance.

D.L.C. begins by arguing that Counsel was ineffective for failing to cross-examine R.M. Specifically, D.L.C. asserts if Counsel had cross-examined R.M., the following information would have been adduced: the alleged offenses occurred when D.L.C. was fifteen years old and before D.L.C. received some of the services R.M. testified about and included in the report; and in addition to D.L.C. obtaining his high school equivalency diploma while in DYS, he had other "successes" there. According to D.L.C., the juvenile court only heard one side of D.L.C.'s story because it did not hear "evidence that could

10

mitigate or combat the Juvenile Office's evidence," and thus, D.L.C. was prejudiced by Counsel's performance. We disagree.

At the hearing, R.M. testified about the report and its contents, addressing each factor under section 211.071.6. During R.M.'s testimony, she discussed the seriousness of the alleged felonies, noting that D.L.C. was alleged to "have committed the most serious offense, which would be a murder[.]" R.M. testified that the allegations involved viciousness and violence, including personal injury and "death to one victim." Further, R.M. opined that there were no services available, "that would be effective in curtailing [D.L.C.'s] involvement in delinquent behavior." While the factors listed in section 211.071.6 are not exclusive, "the first three factors contain some of the most critical considerations in certification and *the seriousness of the offense dominates our inquiry.*" *In re K.M.F.*, 668 S.W.3d 302, 310 (Mo. App. E.D. 2023) (internal citation and quotation marks omitted) (emphasis added).

Here, the juvenile court found the allegations against D.L.C. involved serious offenses. Section 211.071.6(1). The alleged offenses involved "viciousness, force and violence" given that two individuals were shot, with one dying as a result, and the shooting occurred at a busy public park with families present. Section 211.071.6(2). Additionally, D.L.C.'s alleged offenses of murder in the second degree, assault in the first degree, and attempted robbery in the second degree are all offenses against persons. Section 211.071.6(3). Not only did the juvenile court find the first three factors under section 211.071.6 favored certification, it found each factor did. D.L.C. received his first referral when he was only eight years old, and had approximately twenty-one prior

11

referrals. D.L.C. had an extensive history with the juvenile system and he received various juvenile services over the years, with none having a positive or sustained impact on him. Additionally, D.L.C. had two prior waiver of jurisdiction investigations and one commitment to DYS before these allegations occurred. The juvenile court found that D.L.C. had received all services available through the juvenile court, and it concluded that D.L.C. was "beyond the care, treatment and services available under the juvenile system."

D.L.C. points to Counsel's failure to cross-examine R.M. about her testimony that D.L.C. had two DYS commitments prior to the alleged offenses, when in fact D.L.C.'s second commitment occurred after the alleged offenses occurred. However, the juvenile court was well aware of this fact because the report and its judgment included the date of the alleged offenses, November 2, 2020, and included the date of D.L.C.'s second DYS commitment, January 21, 2022. Additionally, D.L.C. asserts Counsel failed to cross-examine R.M. about D.L.C.'s other "successes in DYS." Notably, D.L.C. does not describe in his brief what other successes he achieved. The juvenile court was aware D.L.C. earned his diploma while in DYS, and while D.L.C. argues this shows he took advantage of and benefitted from the services he received, the juvenile court found there were no additional juvenile services or facilities that could benefit D.L.C. In fact, D.L.C. was released from custody in April of 2023, and only three weeks later he was taken into custody for the current alleged offenses. Following being taken into custody, during June and July of 2023, D.L.C. twice absconded from the custody of the juvenile facility, once by assaulting staff members, stealing their keys, and locking the staff members in a

bathroom and again by scaling a fence around the facility. D.L.C. has failed to show he was prejudiced in any way by Counsel's failure to cross-examine R.M., and thus, this claim of ineffective assistance of counsel fails. *See Jindra*, 580 S.W.3d at 641.

D.L.C. also briefly asserts Counsel was ineffective for failing to call a witness from DYS and for failing to call a witness and/or present evidence about how D.L.C.'s long history of system involvement affected his development and behaviors. D.L.C. fails to demonstrate how he was prejudiced by these alleged errors, and merely claims "[i]f Certification Counsel had introduced evidence or otherwise presented mitigating information on behalf of D.L.C. to combat the Juvenile Office's evidence, there is a reasonable probability the certification court would not have dismissed the petition and allowed the matter to proceed to adjudication in the juvenile division." As noted, the juvenile court found every factor under section 211.071.6 favored certification. We find there is no reasonable probability the outcome of the certification hearing would have been different, but for Counsel's alleged errors. Therefore, D.L.C.'s claims of ineffective assistance of counsel fail. *See In re K.M.F.*, 668 S.W.3d at 310.

## Conclusion

We affirm the judgment of the juvenile court.

_____
Gary D. Witt, Judge

All concur

13